# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**TODD ANDREW SMITH,**

              Plaintiff,

v.

**NANCY A. BERRYHILL,** Acting
Commissioner of Social Security

              Defendant.

No. 6:16-cv-01297-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff, Todd Andrew Smith, brings this action for judicial review of the Commissioner of Social Security's decision denying his application for Supplemental Security Income and Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On October 23, 2012, Mr. Smith filed an application for Supplemental Security Income and Disability Insurance Benefits. After a hearing, an Administrative Law Judge determined that Mr. Smith was not disabled under the Social Security Act. Mr. Smith now contends that the Administrative Law Judge erred (1) in weighing the medical opinion of treating psychiatrist Bryan D. Yates, (2) in crediting at step 3 a limitation on social functioning and then excluding that limitation from his residual functional capacity, and (3) in rejecting portions of the lay opinion testimony of physical therapist Tom Zomerschoe. Because the Commissioner of Social Security's decision is based on proper legal standards and supported by substantial evidence, it is AFFIRMED.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner of Social Security ("Commissioner") if her decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the Administrative Law Judge ("ALJ"). *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies her burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's Residual Functional Capacity ("RFC"), age, education, and work experience. *Id.*

In the present case, the ALJ found that Mr. Smith was not disabled. She first determined that Mr. Smith remained insured for Disability Insurance Benefits ("DIB") until December 31,

2012. Tr. 39.[1]  Next, at step one of the sequential evaluation, the ALJ found that Mr. Briceno had not engaged in substantial gainful activity since November 30, 2007, the alleged onset date of disability.  Tr. 39.  At step two, the ALJ determined that Mr. Smith had the following severe impairments: thoracic degenerative disc disease with mild scoliosis, mild cervical degenerative disc disease, mild diverticulitis, hearing loss, attention deficit disorder ("ADD"), and major depressive disorder.  Tr. 39-40.  At step three, the ALJ found that Mr. Smith did not have an impairment or combination of impairments that met or medically equaled the severity of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 40-41.

Before moving to step four, the ALJ found that Mr. Smith had the RFC to perform a reduced range of light work.  Tr. 41.  This included lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking for 4 hours per 8-hour workday, and sitting for 6 hours per 8-hour workday.  Tr. 41.  In addition, Mr. Smith could not climb ladders, ropes, or scaffolds, and could not be exposed to workplace hazards such as unprotected heights or dangerous machinery.  Tr. 41.  Mr. Smith was also required to perform the majority of his work tasks in front of his body and could not engage in sustained overhead work.  Tr. 41.  He further required a15-minute break every two hours and could not be exposed to loud noise.  Tr. 41.  Finally, with respect to his mental abilities, Mr. Smith could only understand, remember, and carry out simple instructions that could be learned in 30 days or less.  Tr. 41.

At step four, relying on the testimony of a Vocational Expert, the ALJ found that Mr. Smith was unable to perform past relevant work as a hospice nurse or general nurse.  Tr. 45.  At step 5, after considering his age, education, work experience, and RFC, the ALJ determined that Mr. Smith was capable of performing jobs existing in significant numbers in the national economy, including electronics work, electronics accessories assembler, and storage facility

---

[1] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

Page 3 – OPINION AND ORDER

rental clerk. Tr. 46. Having made this determination, the ALJ concluded that Mr. Smith was not disabled within the meaning of the Social Security Act and did not qualify for benefits. Tr. 46.

Mr. Smith challenges the ALJ's non-disability determination on three grounds. First, he argues that the ALJ failed to properly weigh the medical opinion of treating psychiatrist Brian D. Yates and, in doing so, ignored functional limitations contained therein. Pl.'s Br. 3-10. Second, Mr. Smith argues that the ALJ erred by crediting at step 3 a limitation on social functioning identified by Dr. Yates and then excluding that limitation from the RFC. Pl.'s Br. 10-13. Finally, Mr. Smith argues that the ALJ improperly rejected portions of the testimony by his physical therapist Tom Zomerschoe. Pl.'s Br. 10. The Court addresses each objection in turn.

### I. **Weight Assigned to the Opinion of Dr. Yates**.

Mr. Smith first argues that the ALJ failed to properly weigh the opinion of Dr. Yates. Pl.'s Br. 3-10. The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). An opinion is inconsistent if the record contains other substantial evidence which "contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3. When a treating physician's opinion is not controlling, it must be "weighted according to factors such as the length of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). In the alternative, a non-controlling opinion may be rejected in full if it is "contradicted by another doctor's opinion" and the ALJ "provid[es] specific and legitimate reasons . . . supported by substantial evidence."[2] *Ryan v. Comm'r of Soc. Sec.*, 528

---

[2] Mr. Smith likely waived the argument that Dr. Yates's opinion was uncontradicted by another treating or examining medical source, and thus subject to the higher "clear and convincing reasons" standard, by failing to raise

Page 4 – OPINION AND ORDER

F.3d 1194, 1198 (9th Cir. 2008). An ALJ "meet[s] this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As a threshold matter, the ALJ did not fully reject the opinion of Dr. Yates. Pl.'s Br. 5; Def.'s Br. 15. Instead, she expressly assigned the opinion "little weight." Tr. 44. The ALJ was therefore not obligated to—though nevertheless did—justify her determination with "specific and legitimate reasons." *See* SSR 96-02p, 1996 WL 374188, at *5. Second, the ALJ was not required to separately discount and then assign a weight to Dr. Yates's opinion. Pl.'s Br. 7-8. Neither the regulations nor case law support imposing such a burden on the ALJ's analytical process. There is no reason an ALJ may not focus her analysis on the ultimate question of weight, provided that she still both meets her burden for declining to assign the opinion controlling weight and justifies the weight assigned.[3] Finally, the ALJ was not required to expressly discuss each factor listed in 20 C.F.R. § 404.1527(c). Pl.'s Br. 8. Instead, an ALJ need only justify the weight assigned to a treating source's opinion with "specific reasons . . . supported by the evidence in the case record." SSR 96-02p, 1996 WL 374188, at *5; *see also Harris v. Colvin*, 584 Fed. Appx. 526, 527 n.1 (9th Cir. 2014) (unpublished) (holding that an ALJ is not "required to specifically reference each factor"); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (same); *Kottke v. Colvin*, No. 6:15-cv-00927, 2016 WL 4374774, at *7 (D. Or. Aug. 15, 2017) (same).

---

it in his opening brief. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009). In any event, as described *infra*, Dr. Yates's opinion was contradicted and the ALJ at least implied as much.

[3] According to Mr. Smith, "[t]he ALJ's reasoning only pertains to whether the doctor's opinion should be given controlling weight, not whether it should be given any weight . . . ." Pl.'s Br. 7. However, as noted above, the ALJ expressly assigned the opinion "little weight" and justified that determination in her subsequent analysis. Tr. 44-45. The ALJ was not required to separately reject and then weigh the opinion—the reasons for assigning little weight to the opinion equally justified declining to assign it controlling weight.

Page 5 – OPINION AND ORDER

Here, the ALJ provided two specific and legitimate reasons, both supported by substantial evidence, for discounting and assigning little weight to the opinion of Dr. Yates. Tr. 44-45. First, the ALJ discounted the opinion because it was "inconsistent with Dr. Yates' [sic] own treatment notes and mental status examinations." Tr. 44-45. Dr. Yates treated Mr. Smith on December 11, 2012, January 24, 2013, and March 21, 2013. Tr. 522, 525, 577. In his initial notes, the only ones recorded during the alleged period of disability, Dr. Yates assessed that Mr. Smith had "low level [sic] chronic depression." Tr. 525. Although he opined that further examination might reveal some unusual circumstance, he questioned how Mr. Smith could have "disabling ADHD but have been able to graduate from nursing school without treatment." Tr. 525. On the second and third visits, Dr. Yates never noted any worsening of symptoms or clarifying circumstances regarding Mr. Smith's alleged ADHD, instead observing "improvement" in concentration, mood, and energy. Tr. 578. Despite these findings, the assessment forms completed by Dr. Yates in July 2013 described depression and ADHD so severe that Mr. Smith could not "maintain significant employment." Tr. 610. It was at least rational for the ALJ to conclude that this assessment was inconsistent with the notes recorded by Dr. Yates. These inconsistencies are a specific and legitimate reason to discount and assign minimal weight to the opinion of a treating physician. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); 20 C.F.R. § 404.1527(c)(3).[4]

Second, the ALJ discounted the opinion of Dr. Yates because the other "medical evidence of record" failed to "corroborate" its content. Tr. 45. The ALJ provided an extensive discussion of the medical record and competing evaluations of two other treating sources, which he cross referenced in his discussion of Dr. Yates's opinion. Tr. 42-45. For example, during the

---

[4] Unlike in *Trevizo*, the case relied on by Mr. Smith, the ALJ cited to specific portions of the treating physician's notes and those notes were not "wholly consistent" with the claimant's physical limitations and course of treatment. *Trevizo*, 871 F.3d at 677.

Page 6 – OPINION AND ORDER

period of alleged disability, the ALJ noted that Mr. Smith's mental impairments were consistently documented as mild to moderate, with otherwise "normal mental status findings." Tr. 42, 289 (finding ADHD "controlled" with medication), 423 (noting normal mental status), 438 (documenting responsiveness to medications), 454 ("[Plaintiff] appears to be functioning relatively well."), 619 (noting normal mental status besides some anxiety). Similarly, Dr. Charles Reagan, who treated Mr. Smith's mental impairments from 2001 to 2008, assigned Global Assessment Functioning scores between 60 and 70, "suggesting only modest impairment." Tr. 42, 263-67. Rebecca Duffy, a psychiatric-mental health nurse practitioner who treated Mr. Smith after Dr. Reagan, also noted that Mr. Smith's mental status appeared normal and concluded that Mr. Smith could still "hold a job." Tr. 413. It was, as such, reasonable for the ALJ to interpret the medical record as inconsistent with the opinion of Dr. Yates and this was a specific and legitimate reason to discount it. *See* 20 C.F.R. § 404.1527(c)(4).

The ALJ also discounted Dr. Yates's opinion because it covered only the last month of Mr. Smith's insured status and because Mr. Smith participated in health care appointments. Tr. 45. It is true that Mr. Smith had no problems participating in healthcare appointments and that the opinion only covered the last nineteen days of his insured status. The Court agrees with Mr. Smith, however, that it is unreasonable to discount Dr. Yates's opinion on these bases. Although the length of a treatment relationship is a legitimate reason for discrediting an opinion, *see* 20 C.F.R. § 404.1527(c)(2)(i), the Court fails to see how an opinion is entitled to less weight *solely* because it covers a period closer to the claimant's date last insured. Similarly, it would make little sense to penalize claimants for seeking and receiving treatment from a physician. This is not a legitimate reason for discounting the opinion of a treating source. Nevertheless, these errors are harmless because the ALJ's determination is otherwise based on specific and

legitimate reasons supported by substantial evidence in the record. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). As such, her opinion is entitled to deference.

### II. Exclusion of Social Functioning Limitations from RFC

Mr. Smith next argues that the ALJ erred in omitting his social functioning limitations from the RFC. Pl.'s Br. 11. The RFC is the most a claimant can do, despite her physical or mental impairments. 20 C.F.R. §§ 404.1545, 404.945. In formulating an RFC, the ALJ must consider all medically determinable impairments and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. 20 C.F.R. § 404.1545; *see also* SSR 96-8p, 1996 WL 374184, at *3. Nevertheless, only limitations supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2009). In addition, the RFC reflects only a claimant's concrete functional limitations resulting from her medical impairments, not the impairments themselves. SSR 96-8p, 1996 WL 374184, at *6. To that end, "[t]he limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment" and are strictly "for rat[ing] the severity of mental impairment(s) at steps 2 and 3." SSR 96-8p, 1996 WL 374184, at *4. An ALJ is therefore not required to incorporate impairments identified at step three if she finds that substantial evidence of "concrete work-related" limitations stemming from those impairments is lacking. *Rogers v. Comm'r of Soc. Sec.*, 490 Fed. Appx. 15, 17-18 (9th Cir. 2012).

At step three, the ALJ determined that Mr. Smith had moderate difficulties in social functioning. Tr. 40. She expressly based this conclusion on Mr. Smith's testimony that he "self-isolates" due to depression. Tr. 40. The ALJ did not, as Mr. Smith alleges, adopt Dr. Yates's opinion at step three and the RFC was not required to mirror her step three conclusions with

respect to the "broad categories" found in the paragraph B criteria. *Rogers*, 490 Fed. Appx. at 17-18; SSR 96-8p, 1996 WL 374184, at *4. To the contrary, the ALJ specifically addressed Mr. Smith's relevant symptom testimony and discounted its credibility by noting inconsistencies with his activities of daily living and medical record, as well as by pointing to Mr. Smith's less-than-candid statements about marijuana cultivation. *See, e.g.*, Tr. 40 ("He is able to go out alone and does grocery shopping for his family."), 42 ("Despite his impairments, the claimant described fairly average daily activities."), 44 ("[H]e initially claimed [his marijuana plants] died because he could not focus, but later admitted the plants died from an infection he is aware regularly affects the plant roots."). These are clear and convincing reasons, each supported by substantial evidence, for discrediting Mr. Smith's testimony and omitting additional limitations on social functioning from the RFC. *See generally Molina v. Astrue*, 674 F.3d 1104, 1163 (9th Cir. 2012) (holding that an ALJ may assess credibility based on, among other things, ordinary techniques of evaluation, activities of daily living, medical evidence, and inconsistencies in testimony).

Despite Mr. Smith's allegation that the ALJ based her step three social functioning conclusion on the opinion of Dr. Yates, that opinion falls short of identifying concrete vocational limitations which would be relevant to the RFC. Pl.'s Br. 11. Specifically, when a medical source opinion does not prescribe any particular functional limitation on a claimant, the ALJ is not required to assume that the medical source intended any such limitation to be included. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Here, the narrative portion of Dr. Yates's assessment says nothing about concrete vocational limitations. Tr. 610. It is not, as Mr. Smith asserts, the ALJ's responsibility to "translate the limitations of moderate social functioning . . . into concrete limitations." Pl.'s Br. 12; *see also Garner v. Colvin*, 626 Fed. Appx. 699, 703 (9th Cir. 2015) (affirming ALJ decision where the RFC only reflected

limitations described in the narrative portion of the assessment). In any event, as already discussed, even if the assessment did prescribe concrete vocational limitations, the ALJ assigned little weight to the opinion of Dr. Yates and properly supported this finding with specific and legitimate reasons.[5] *See supra* pp. 4-8. Because the ALJ properly discounted the symptom testimony of Mr. Smith, and adequately accounted for the limitations assessed by Dr. Yates, it was proper to exclude Mr. Smith's social functioning impairments from the RFC.

### III. Lay Opinion Testimony of Tom Zomerschoe.

Finally, Mr. Smith argues that the ALJ improperly rejected the lay opinion testimony of physical therapist Tom Zomerschoe. Pl.'s Br. 13-15. In general, "lay witness testimony . . . is competent evidence that an ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted). To reject such testimony, an ALJ must provide specific "reasons germane to each witness." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted). An ALJ may not disregard competent lay witness testimony "without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1993). Nevertheless, an ALJ's failure to provide germane reasons is harmless error if it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). It is, for instance, harmless error when an ALJ ignores portions of lay witness testimony if that testimony is contradicted by other properly credited "substantial evidence" or "cumulative of other testimony that the ALJ properly rejected." *Molina*, 674 F.3d at 1120; *cf. Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir.2006) (finding reversible error where the lay opinion was "uncontradicted" and "consistent with medical evidence").

---

[5] Further, to the extent Mr. Smith could allege any error with respect to his social functioning impairment, the Court agrees with the Commissioner that it would most likely be harmless since at least one of the jobs identified by the VE, i.e., Electronics Worker, requires minimal social interaction. Electronics Worker, *U.S. Dep't Labor, Dictionary of Occupational Titles*, #726.687-010, *available at* 1991 WL 679633.

Page 10 – OPINION AND ORDER

Mr. Smith argues that the ALJ failed to assign a weight to Mr. Zomerschoe's opinion, effectively rejecting it without any germane reasons. Pl.'s Br. 13. Mr. Zomerschoe testified as follows: "Patient should avoid prolonged sitting activities. He should avoid all overhead repetitive activities and avoid all twisting activities. He should also avoid lifting over 20 [lbs] and avoid frequent lifting of 10 [lbs], otherwise there are no limitations." Tr. 333. With respect to the restriction on prolonged sitting, the ALJ clearly stated that the restriction was "inconsistent with the claimant's own testimony [that] he spends most the day sitting," as well as "the findings on examination[ ] and the imaging studies." Tr. 44. A conflict with other evidence in the record is a germane and specific reason for discounting lay opinion testimony. 20 C.F.R § 404.1527(c)(4); *see also Lewis*, 236 F.3d at 511 (conflicting medical evidence); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (conflicting symptom testimony). The ALJ's finding with respect to restrictions on sitting, which was also supported by substantial evidence in the record, *see* Tr. 13, 43-44, 372-75, 378, is therefore without error.

Mr. Smith is correct, however, in noting that the ALJ never expressly rejected the restrictions on twisting and overhead activities. Pl.'s Br. 14. Nevertheless, this error is harmless. As reiterated by the Ninth Circuit in *Molina*, it is not "per se prejudicial" for an ALJ to omit individualized reasons for discounting lay witness testimony. 674 F.3d at 1117. Instead, failure to discuss lay testimony is harmless error if "the testimony is contradicted by more reliable medical evidence that the ALJ credited." *Id.* at 1119. The proper question, therefore, is whether the record, "as a whole," supports the ALJ's nondisability determination. *Id.* at 1121. Here, the ALJ assigned the greatest weight to the opinion of treating physician Raymond Nolan. Tr. 44. Dr. Nolan's opinion concluded that Mr. Smith is able to perform "occasional . . . twisting" and assessed no limitation on overhead reaching. Tr. 43. This testimony, the ALJ further noted, was

"consistent with the treatment records as a whole and the claimant's reported activity levels." Tr. 44. As such, Mr. Zomerschoe's lay opinion was contradicted by other "substantial evidence" in the record, including "more reliable medical evidence." *Molina*, 674 F.3d at 1119-20. Under the principle articulated in *Molina*, the ALJ's error was therefore harmless. *Cf. Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 281, 286 (2004) (holding that, even when an agency "explains its decision with less than ideal clarity," a reviewing court must uphold the decision "if the agency's path may reasonably be discerned").

Finally, Mr. Smith argues that, even if the ALJ rejected Mr. Zomerschoe's testimony, this Court cannot make a final determination as to the legal validity of that rejection because the record is incomplete. Pl.'s Br. 14. He basis this argument on the pagination of Mr. Zomerschoe's opinion, the bottom of which is marked as "page 3," but which includes no "page 1" or "page 2." Pl.'s Br. 14 (citing Tr. 333). He also speculates that the ALJ was privy to additional information because, despite the opinion being undated, she noted that it was rendered in January 2012. Pl's Br. 14 (citing Tr. 43).

To begin, the date of Mr. Zomerschoe's opinion is reflected at other points in the record and it is immaterial from where the ALJ ascertained that date. *See, e.g.*, Tr. 360. More important, however, it was the responsibility of Mr. Smith, not the Commissioner, to furnish any missing evidence. *See* 20 C.F.R. § 404.1512. In particular, an ALJ is only required to further develop a record if it contains "ambiguous evidence" or the ALJ "finds that [it] is inadequate to allow for proper evaluation of the evidence." *Tonpetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). There was, however, nothing ambiguous about the record and no contrary finding by the

ALJ; the restrictions assessed by Mr. Zomerschoe were perfectly clear and rejected by the ALJ based on factors extraneous to the opinion itself. Mr. Smith received a full and fair hearing.[6]

## CONCLUSION

For the foregoing reasons, the ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 18th day of January, 2018.

        /s/ Michael J. McShane_____
        Michael J. McShane
        United States District Judge

---

[6] It would also be a clear waste of judicial and agency resources to remand the case simply to retrieve what appears to be a missing cover page when all relevant portions of the testimony were included.